In the
UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| **BETTY A. TAYLOR**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | ) CAUSE NO. 1:09-cv-625-SEB-DML |
| | ) |
| **MICHAEL J. ASTRUE**, Commissioner of Social Security, | ) ) |
| | ) |
| Defendant. | ) |

# E N T R Y

Plaintiff Betty Taylor applied for Social Security disability benefits in March 2006, (R. 69), alleging that she had been disabled since January 1994 due to a learning disability and a back problem, (R. 72). Her application was denied by Defendant Commissioner of Social Security and Ms. Taylor brings this suit to obtain judicial review of that decision. For the reasons stated herein, the Commissioner's decision is reversed and remanded for reconsideration.

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision,

1

then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review follows the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of his legal conclusions is *de novo*. *Richardson*, *supra*.

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(I) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 USC § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20

C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

The burden rests on the applicant to establish steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability

determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used and a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the national Appeals Council to review the decision. If the Appeals Council either declines to review or affirms the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] Initial and reconsideration reviews in Indiana are performed by an agency of the state government — the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration — under arrangement with the Social Security Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601 *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

Ms. Taylor applied for disability benefits under the Supplemental Security Income program of the Social Security Act.[2] Her application was denied on initial and reconsideration reviews. A hearing before an ALJ was held in January 2009 at which Ms. Taylor testified; Dr. Paul Boyce testified as a medical expert; and Michael Blankenship testified as a vocation expert. (R. 188). Ms. Taylor was represented at the hearing by her current counsel. The ALJ denied Ms. Taylor's application, (R. 19), and the Appeals Council denied Ms. Taylor's request for review, (R. 6), rendering the ALJ's decision the one that we review.

At step one of the sequential evaluation process, the ALJ found that Ms. Taylor had not engaged in substantial gainful activity since March 16, 2006. At step two, she found that Ms. Taylor had the severe impairments of borderline to low average intelligence and marijuana abuse. The ALJ found that Ms. Taylor's back problem and possible carpal tunnel syndrome were not severe impairments and the ALJ rejected Ms. Taylor's argument that she has schizophrenia. At step three, the ALJ found that Ms. Taylor's impairments, either individually or in combination, did not meet or medically equal any of the Listing of Impairments. She examined Listings 12.02 (organic mental disorders) and 12.09 (substance addiction disorders). For the purposes of steps four and five, the ALJ determined that Ms. Taylor has the RFC to perform medium work with the limitations to simple and repetitive tasks and no work requiring either written instructions or completion of written reports by the employee. At step four, the

---

[2] Two programs of disability benefits are available under the Social Security Act: Disability Insurance Benefits ("DIB") for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423, *et seq.*, and Supplemental Security Income benefits ("SSI") for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381, *et seq.*

5

ALJ found that Ms. Taylor had no past relevant work. Finally, at step five, the ALJ considered Ms. Taylor's age (34 when she applied for benefits), education (limited, able to communicate in English), and skill level (irrelevant due to the absence of past relevant work), and the testimony of the vocation expert, and concluded that Ms. Taylor was not disabled. Ms. Taylor asserts several errors in the ALJ's decision.

**Due Process.** Ms. Taylor argues that the ALJ's decision denied her constitutional due process of law because it rejected all of the evidence proving disability, simply rubber stamped the decisions of the agency physicians, denied Ms. Taylor a fair consideration of her claim, and failed to build an accurate and logical bridge from all of the evidence to her conclusions. However, Ms. Taylor failed to present a factually and legally developed argument for a due-process violation. The three cases that she cites provide no support. Two, *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 859 (7th Cir. 1978), and *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000), do not mention due process.[3] The third, *Ray v. Bowen*, 843 F.2d 998, 1007 (7th Cir. 1988), reversed and remanded a claim because the ALJ failed to obtain a retroactive psychological examination of the applicant to determine if disabling alcoholism existed during the relevant time period. After comparing the situation to a trial judge's due-process obligation to obtain a retroactive examination of a litigant who was possibly incompetent at the time of trial, the Court held that, "[t]hough [disability applicant] has no analogous due

---

[3] *Smith v. Secretary* faulted an ALJ's failure to explain with sufficient detail and care the role and advantages of a lawyer to a mentally infirm, unrepresented applicant and the ALJ's failure to fully develop the record when the applicant was unrepresented. It did not address due process. *Smith v. Apfel* held that an ALJ failed to fully develop the record and failed to consider some of applicant's contrary evidence, but not within a due-process framework. Both decisions were based on statutory and regulatory grounds.

process right to disability benefits, we believe that he is entitled to a fair hearing on this claim and, ultimately, justice." The Court offered no more due-process analysis or discussion with regard to disability evaluations. Whether administrative determinations violate due process and, if so, whether a remedy is available beyond the benefit at issue, are complex questions of fact and law. *See*, *e.g.*, *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *Schweiker v. Chilicky*, 487 U.S. 412 (1988). It is not a due-process violation *per se* for an ALJ to reject evidence supporting a finding of disability, to not discuss all of the evidence, or to reject an applicant's assertion that a medical expert is required. The Court will not assume Ms. Taylor's burden to research the law of due process, search the record for possible violations, and construct a focused, logical, and persuasive argument applying the law to the facts. Without developed factual or legal support, Ms. Taylor's due-process argument fails.[4]

**Medical opinion regarding medical equivalence.** Ms. Taylor argues that the ALJ erred by not calling a medical expert to provide an opinion on whether her impairments, singly or in combination, medically equaled any of the Listings. She contends that the ALJ refused to allow the medical expert at the hearing, Dr. Boyce, an internist, to testify regarding her mental impairments and that the ALJ relied solely on her layman's opinion regarding medical equivalence. The ALJ correctly did not allow Dr. Boyce to opine on Ms. Taylor's mental impairments because he was not a qualified psychologist or psychiatrist. (R. 191-92, 223).[5]

---

[4] In addition, Ms. Taylor failed to demand or define any remedy for the alleged deprivation of her due-process rights than what is otherwise obtainable under the Social Security Act and regulations in this action for judicial review.

[5] In this, the ALJ was consistent: she also did not accept the alleged diagnosis of schizophrenia by Ms. Taylor's family practitioner because she was not qualified to make such a

7

Qualified medical opinion is required on the question of medical equivalence. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004).[6] *See*, *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996) (an ALJ may not substitute her layman's opinion for that of medical professionals). While the Commissioner is correct that disability-review forms completed by state-agency physicians fulfill the requirement for expert medical opinion on the issue of medical equivalence, *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004), the ALJ's written decision does not show that she explicitly or implicitly relied on such state-agency medical opinions in finding the absence of medical equivalence. Her only mention of the issue of medical equivalence is in the heading of the relevant section of the decision; in that section, she addresses only the paragraphs B and C criteria of listings 12.02 and 12.09. Moreover, the ALJ could not have relied on the opinions of the state-agency physicians because they found that Ms. Taylor had only a back impairment,[7] not a mental impairment and no impairment related to marijuana abuse. The

---

diagnosis. (R. 192-93).

[6] "Moreover, as is evident from the perfunctory discussion of the listing, the ALJ never consulted a medical expert regarding whether the listing was equaled. Whether an applicant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue. See 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings . . . . We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."); S.S.R. 96-6p at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), reinstating SSR 83-19; *see Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir.1989) (concluding that ALJ complied with requirement of Social Security Ruling 83-19 that he consider a consulting physician's opinion regarding medical equivalency)." *Barnett*, 381 F.3d at 670.

[7] (R. 33, 34 (Disability Determination and Transmittal forms completed by state-agency physicians for initial and reconsideration reviews, recording only the "primary diagnosis" of "Disorders of the Back — Discogenic & Degenerative"), 139 (Physical Residual Functional Capacity Assessment form ("PRFC"), showing a primary diagnosis of "chronic diffuse back

8

Psychiatric Review Technique form ("PRT"), on which the state-agency physicians recorded their evaluations of Ms. Taylor's mental condition shows only their opinion that she has no mental impairment and no functional limitation due to mental impairments. (R. 112 (no boxes checked regarding mental condition), 111 (affirming PRT)). Thus, in finding that Ms. Taylor has the severe impairments of borderline to low average intelligence and marijuana abuse, the ALJ already went beyond the medical opinions of the state-agency physicians. Because the ALJ failed to cite any qualified medical opinion to support her implicit further finding that Ms. Taylor's impairments did not medically equal any of the Listings, her step-three finding was incomplete and erroneous.[8]

**Listing 12.03C, schizophrenia.** Ms. Taylor argues that the ALJ erroneously failed to evaluate the evidence under Listing 12.03C for schizophrenia "although the evidence of diagnosis (R. 156) and treatment with the antipsychotic medication Seroquel (R. 164) appears in the record." (Plaintiff's Brief (dkt. 17) at 19). The only Record evidence to which Ms. Taylor points to support her contention that she had schizophrenia is (1) her report of auditory and visual hallucinations to her family practitioner during a routine visit on June 5, 2007, (R. 156); (2) the family practitioner's decision during that visit to refer her to Midtown Community Mental Health Center for evaluation of possible schizophrenia because of the report of hallucinations, (R. 156, 157); (3) Ms. Taylor's report to Midtown Center's interviewer during

---

pain," no secondary diagnosis, and "learning disability" as only an "Other Alleged Impairment"), 110 (affirming PRFC)).

[8] Ms. Taylor otherwise raised no issue regarding the medical support for the ALJ's step-three findings.

9

her visit on June 29, 2007 that she had experienced hallucinations for the past five years, (R. 168); and (4) on an emergency-room record of a visit that Ms. Taylor made on September 19, 2007, on the line for "current meds," appears the notation "Seroquel inhaler," (R. 164).[9]

The ALJ did not evaluate Ms. Taylor's mental impairment under Listing 12.03C for schizophrenia because the ALJ did not find that she had schizophrenia and there is more than substantial evidence to support that conclusion. First, Ms. Taylor cites no diagnosis of schizophrenia in the Record. Second, that Seroquel appears as a current medication on the emergency-room form is no evidence that Ms. Taylor has schizophrenia. There is no explanation of the source or validity of that notation on the form. It would be unreasonable for us, or the ALJ, to draw the inference from that bare notation that Ms. Taylor was diagnosed with schizophrenia. If Ms. Taylor had undergone the required mental examinations and tests to support a diagnosis of schizophrenia and treatment with Seroquel, then the ALJ, and the Court, are entitled to assume that certain evidence of that fact would be available and would have been presented. Third, Seroquel does not appear on any other list of Ms. Taylor's medications. Fourth, as the ALJ pointed out, if, as she reported to Midtown in 2007, Ms. Taylor had been experiencing hallucinations for the past five years, her failure to mention them to the examining psychologist during her consulting mental examination on May 3, 2006 or to the examining physician on May 26, 2006 calls the veracity of her report into question. (R. 26). Fifth, there is no evidence in the record of any medical evaluation of her reports of experiencing

---

[9] Ms. Taylor asserts, and Commissioner does not contest, that Seroquel is a medication for the treatment of schizophrenia.

hallucinations. Therefore, the ALJ did not err by not evaluating Listing 12.03C.[10]

**Listing 12.05C, mental retardation.** Ms. Taylor argues that the ALJ erred by not considering whether her mental impairment satisfied Listing 12.05C for mental retardation. She points to evidence in the record that supports her assertion that she is mentally retarded and that should have caused the ALJ to consider Listing 12.05C. First, Dr. Michael O'Brien, psychologist, who examined Ms. Taylor on request of the state agency, administered an IQ test which resulted in scores of 55 verbal, 54 performance, and 50 full-scale, which are within the mental-retardation range. (R. 126, 130). But Dr. O'Brien rejected these scores as invalid, and declined to interpret them, because he found that Ms. Taylor was uncooperative and not trying her best. He found that she was irritable during the examination despite efforts to gain her cooperation. He found that she presented as someone with a higher intelligence than represented by the scores and estimated that her full-scale IQ was somewhere between 75 and 95, well outside the range of mental retardation. He also assigned her a GAF score of 75, indicating that, "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." American Psychological Association, *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* ("DSM-IV-TR"), at 34 (2000).[11] The ALJ accepted Dr. O'Brien's

---

[10] Although not argued by the Commissioner, we note that Ms. Taylor does not even approach citing Record evidence showing or even suggesting satisfaction of Listing 12.03C's criteria.

[11] The GAF, or Global Assessment of Functioning, is a scale measuring a person's overall level of functioning with regard to psychological, social, and occupational functioning,

opinion.

Ms. Taylor points out that Dr. O'Brien was not provided with any of her mental-health records; he did not see a school record allegedly showing IQ scores consistent with his rejected test results, (R. 104, 147); and he "never saw the evidence indicating that she suffered from schizophrenia, although he noted that she was quite 'irritable' for no apparent reason." (Plaintiff's Brief at 19). Ms. Taylor relies on Dr. O'Brien's note in his report that "[n]o mental health records were forwarded by the DDB," (R. 126), but she fails to identify what those records are and what information in them indicates mental retardation. She was also unable to identify any mental-health records at the hearing. (R. 192). The ALJ rejected the school record because its source was unknown, it bore no identification, and the content was not self-explanatory. (R. 26). Dr. Boyce, the medical expert at the hearing, suspected that the school record represented standardized testing rather than IQ levels. (R. 223). The ALJ reasonably rejected the school record because it could not be determined whether it represented IQ scores and, if it did, what type of test was administered and under what conditions.[12] Ms. Taylor provided none of those details. At any rate, Dr. O'Brien clearly found that Ms. Taylor was "faking bad" on his current IQ test and opined, based on her history and her presentation, that she had an IQ and a GAF score well beyond mental retardation. Not having seen the school

---

not physical or environmental limitations. *DSM-IV-TR* at 32.

[12] The Commissioner also argued that, if the school record shows IQ scores, then they were stale and points to the provisions of 20 C.F.R. Part 404, Subpt. P, App. 1, Part B, Rule 112.00D10 providing that such IQ scores should be considered valid only for two years. However, the ALJ did not rely on this part of the regulations and did not otherwise find that the scores, if indeed they were IQ scores, were stale.

record of some unidentified type of testing does not suggest that his opinions are invalid.

In addition, as discussed above, there is no evidence of a diagnosis of schizophrenia in the Record of which Dr. O'Brien was not informed. There are only a few notations that Ms. Taylor reported experiencing hallucinations but the ALJ found these reports not credible in part because there was no psychological evaluation of her allegations and she did not report experiencing hallucinations to consulting examiners Dr. O'Brien, psychologist, and Dr. Poplin, M.D., (R. 132). Ms. Taylor asserted that the ALJ also ignored the fact that she was being treated for schizophrenia, but the only evidence of treatment that she alleges is the above-discussed note on the emergency-room record that a Seroquel inhaler was a current medication. As we noted, Ms. Taylor never even suggested who might have prescribed Seroquel for her, for what reason, or why it does not appear in any other list of her medications. Finally, again, Ms. Taylor fails to explain why Dr. O'Brien's opinions regarding her IQ and GAF (and, therefore, her alleged mental retardation) are compromised by his not being aware of her allegations of hallucinations or the cryptic note regarding Seroquel.

Ms. Taylor also argues that the ALJ ignored the evidence showing that she was in special education in elementary school, repeated the second grade, and, at that time, was still reading at the lower-first-grade level. But Ms. Taylor does not explain how these facts support the existence of mental retardation or compel further investigation, especially in the face of Dr. O'Brien's current examination and the ALJ's evaluation of Ms. Taylor's actual history of work and daily activities since the second grade.

Finally, Ms. Taylor argues that the ALJ erred when she discounted her allegations that

13

she cannot read because she had obtained a driver's license, which meant that she must have read the written portion of the test. Ms. Taylor argues that the ALJ failed to consider that the written portion "could have been read to her." However, she did not, and does not now, allege that the written portion of the test was read to her. Regardless, the ALJ limited her to jobs that did not require written instructions or the completion of written reports by the employee, thus accommodating whatever reading difficulties that she has.

The ALJ did not err by not evaluating Listing 12.05C for mental retardation.

**Ignored evidence.** Ms. Taylor argues that the ALJ "arbitrarily rejected the treatment and examination evidence proving the applicant was totally disabled" and "ignored, without explanation, misstated or rejected all of the evidence which proved the claimant's total disability." (Plaintiff's Brief at 22). There follows a catalog of evidence allegedly favorable to Ms. Taylor's disability that she contends the ALJ allegedly ignored, misstated, or arbitrarily rejected. But she really complains that the ALJ did not draw the inferences from the evidence that Ms. Taylor draws or give the evidence the weight that Ms. Taylor gives to it. An ALJ is not required to address every piece of evidence in her decision; it is sufficient if she traces the path of her reasoning and logically connects the evidence to her findings and conclusions. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir.2002); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.1993). After reviewing the ALJ's decision and Ms. Taylor's litany of evidence, we are convinced that the ALJ did not ignore or arbitrarily reject the evidence and that she adequately traced the path of her reasoning and logically connected the Record evidence to her findings and conclusions.

**Erroneous credibility determination.** Ms. Taylor contends that the ALJ's credibility findings are contrary to Social Security Ruling 96-7p because the ALJ "failed to make any accurate findings concerning the seven factors the Ruling requires the ALJ to consider," that her credibility determination "ignored or only selectively considered the evidence corroborating her allegations," and the ALJ's credibility findings are contrary to the evidence. (Plaintiff's Brief at 26). That is the totality of Ms. Taylor's argument. As an undeveloped, perfunctory argument, it is forfeited.[13]

**Step five determination.** In an even more perfunctory argument, Ms. Taylor states that the ALJ's RFC finding must be reversed because it "omits all of the quite severe limitations due to the claimant's chronic mental illness. Remand is required where an ALJ fails to give full consideration to all of a claimant's documented impairments in determining that she is not disabled . . . ." (Plaintiff's Brief at 27). This undeveloped, perfunctory argument is also forfeited.

**Conclusion**

---

[13] In other parts of her brief, Ms. Taylor argues that the ALJ erred when she discounted Ms. Taylor's reports of experiencing hallucinations on the ground that Ms. Taylor failed to follow up with treatment and evaluation with the Midtown Community Mental Health Center. (R. 26, 167, 168, 169, 171). Ms. Taylor argues that SSR 96-7p forbids ALJs from making such credibility judgments based on an applicant's failure to obtain or follow treatment without exploring the reasons that the applicant did not obtain or follow the treatment. Ms. Taylor asserts that she did not have the funds to pursue the Midtown evaluation (although she fails to explain how much the evaluation would have cost her). We do not read the ALJ's comment as discrediting her allegations of hallucinations because she failed to pursue or follow up on treatment or evaluation, because that is what is expected of a person truly experiencing recurrent hallucinations for five years. Rather, the ALJ's comment is better understood as her giving little or no weight to the allegations of hallucinations because of the lack of psychological or medical evaluation of them due to Ms. Taylor's failure to cooperate.

15

The Commissioner's decision is affirmed in all respects except for his failure to obtain expert medical opinion on the question of whether Ms. Taylor's impairments of borderline to low average intelligence and marijuana abuse medically equal any of the Listings. On remand, the Commissioner shall obtain expert medical opinion regarding medical equivalence and reconsider his step-three determination accordingly. Therefore, the Commissioner's decision is REVERSED and REMANDED as set forth herein.

**SO ORDERED.**

Date: 09/27/2010

*[signature]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com